**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. [SBN: 249203]
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**BANKRUPTCY LAW CENTER, APC**
Ahren A. Tiller, Esq. [SBN 250608]
ahren.tiller@blc-sd.com
1230 Columbia Street, Suite 1100
San Diego, CA 92101
Telephone: (619) 894-8831
Facsimile: (866) 444-7026

**HYDE & SWIGART**
Joshua B. Swigart, Esq. [SBN: 225557]
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DAVID BODIE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LYFT, INC.,<br><br>Defendant. | **CASE NO: 3:16-cv-02558-L-NLS**<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET. SEQ.**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. JASON DAVID BODIE ("Plaintiff") brings this class action complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of LYFT, INC. ("Defendant" or "Lyft") and its related entities, subsidiaries and agents, in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b), because Plaintiff resides in this district and Defendant conducts business in the County of San Diego.

## PARTIES

4. Plaintiff is an individual citizen and resident of the State of California, County of San Diego.

5. Plaintiff is informed and believes, and thereon alleges, that LYFT, INC. is, and at all times mentioned herein was, a Delaware corporation whose principal place of business is located in San Francisco, California.

6. Lyft is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

7. Upon information and belief, Lyft is a transportation networking company that provides a mobile application to enable connecting passengers with drivers using

personal vehicles.

8. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant conducted business in the State of California and in the County of San Diego.

## FACTUAL ALLEGATIONS

9. On or about October 10, 2016 at approximately 2:25 pm PST, Plaintiff received two text messages, one immediately after the other, from telephone number 415-408-5865, which belongs to or was used by Lyft or an agent of Lyft, Inc.

10. The first of the two text messages sent to Plaintiff instructed him to download the Lyft App to his cellular phone, stating, "Download the Lyft app".

11. The second unsolicited text message contained a link to download Lyft's app in the Apple App Store, stating, "lyft.com".

12. None of these text messages were addressed to Plaintiff by name.

13. Upon information and belief, the text messages were sent at the direction of Lyft, Inc. to Plaintiff and several hundreds of other individuals within a short period of time.

14. Upon information and belief, the text messages were sent via a commercial text messaging system by an agent or vendor hired by Lyft who was acting under the direction and control of Lyft for the financial benefit of Lyft.

15. Upon information and belief, Lyft instructed its agent or vendor as to the content of the text messages and timing of the sending of the text messages, in an effort to increase use of Lyft's mobile application.

16. Upon information and belief, Lyft is vicariously liable for the telemarketing conduct of its agent and vendor alleged herein, specifically, Twilio Inc. ("Twilio"). Twilio is a cloud-based communications company that markets and sells their SMS Bulk text messaging campaign program and dialers to customers,

which allows said customers to advertise to unknown potential customers by calling and texting millions of random individuals' cellular telephones.

17. Upon information and belief, the automated text messaging system used to send the SMS text messages to Plaintiff was provided by Twilio, which utilizes a sophisticated commercial dialing platform to send "real-time" text message notifications, including marketing text messages, to consumers' cell phones.

18. Based upon recent online research, "Lyft uses Twilio to send notifications" via text messages. See https://customers.twilio.com/249/lyft/, accessed January 22, 2019.

19. According to Twilio's website, "Lyft cut support costs by 100%" by utilizing Twilio. See https://customers.twilio.com/249/lyft/, accessed January 22, 2019.

20. According to Twilio's website, Twilio offers services that include the ability to "[s]end and receive text messages globally," and to "programmatically send messages to millions." See https://www.twilio.com/sms, accessed January 22, 2019.

21. According to Twilio's website, the Twilio dialing platform can "[s]end one or 1 billion messages," see https://www.twilio.com/sms, accessed January 22, 2019.

22. Upon information and belief, the SMS text messages were sent using equipment that can produce and automatically send text messages *en masse* to thousands of cellular telephone numbers stored as a list or database without the need for an individual person to dial the numbers, instead the software program calls the cellular telephone numbers of the recipients of the campaign on its own.

23. Upon information and belief, the Twilio platform has the capacity to automatically dial and send text messages to cellular telephone numbers in random orders via the Twilio, Inc. SMS Mass Texting platform's number generation program that produces numbers to be dialed with random combinations of telephone numbers

1   beginning with prefixes in the area of the assigned advertising campaign.

2   24. As stated on Twilio Inc.'s website, "With bulk notifications, a business can send relevant, targeted messages to large groups with only one API ('Application Programming Interface') request." Customers of Twilio access the technology platform via an application program interface ("API") that permits them to programmatically create messages that are subsequently and automatically transmitted by Twilio. Twilio's programmatic text messaging service provides their mobile telemarketing customers with an "SMS API" which interfaces to "cloud software" capable of automatically sending "billions of SMS messages" to the cellular telephones of mobile subscribers via "more than 900 global carriers."

25. Twilio's SMS API is accessed by Twilio users through a "client program" that incorporates the SMS API. A client program is a software program used by Twilio's customers incorporating the SMS API software to communicate with Twilio's platform technology. The SMS API incorporated into the client program enables Twilio's telemarketing customers to create message text content or portions of content. Telemarketing customers can then upload and store that content on Twilio's hosted platform. This content is subsequently used by Twilio to automatically and programmatically create, build, copy and initiate any number of SMS messages to be sent to a list of cellular telephone numbers containing that same content—the precise definition of an automated text message program. Other basic functions enabled by the SMS API include the ability to upload the list of cellular telephone numbers to be stored for the automated text messaging program and an automatic means to determine when text messages using the provided content are to be created, built, copied and sent automatically to the stored list of cellular telephone numbers.

26. Here, upon information and belief, an employee of Lyft directed Twilio to send the two text messages described in Paragraphs 9-12 above, by entering the content

and designating the cellular telephone number prefixes for which the Twilio Mass SMS Campaign software would generate in random order and dial individually without a human needing to in fact dial the number and intervene after the original content and amount of random numbers were entered into Twilio's program.

27. Upon information and belief, which Plaintiff will prove via evidentiary support after a reasonable opportunity for further investigation and discovery, Plaintiff alleges that the Defendant Lyft hired Twilio's bulk SMS messaging platform to send the two SMS messages sent in rapid succession to Plaintiff, which are described in Paragraphs 9-12 above, with only one API, thus the SMS Bulk software generated, dialed, and sent the SMS messages to Plaintiff without a human doing so.

28. Twilio describes their SMS Bulk text messaging software used by Lyft as a: "Super Network"—a software layer that interconnects with telecom networks around the world—is already baked into the Twilio SMS API ("Application Programming Interface.

29. Twilio allows users to programmatically send automated text messages and phone calls, and is often used for "mobile marketing" through text messages and telemarketing calls. In fact, Twilio provides clients with a tutorial on effective mass, mobile marketing. Yet, tellingly, Twilio makes clear that the use of the Twilio application has a precondition that users of the Twilio service verify that the "user wants to opt into SMS and MMS notifications from your company." This is due to the fact that Twilio is aware the use of their Mass Text Messaging Bulk SMS program would violate the Telephone Consumer Protection Act (47 U.S.C. § 227) if sent to recipients' cellular telephones without their consent, as they are aware their software falls within the statutory definition of an Automated Telephone Dialing System.

30. Therefore, the SMS Bulk text messaging Twilio software used by Lyft was

equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers, thus the Twilio mass SMS software used by Lyft was an Automated Telephone Dialing System as that term is defined under 47 U.S.C. § 227(a)(1).

31. The SMS text messages described in Paragraphs 9-12 sent to Plaintiff constituted a "telephone solicitation" within the meaning of 47 U.S.C. § 227(a)(4) in that they were initiated for the purpose of encouraging the purchase of a good or service.

32. Plaintiff did not provide prior express written consent allowing Defendant, or anyone acting on behalf of Defendant, to send these SMS text messages to Plaintiff's cellular telephone, pursuant to 47 U.S.C. § 227 (b)(1)(A).

33. Plaintiff did not have an established business relationship with Defendant at the time of these text messages.

34. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

35. Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated and distressed that, Defendant interrupted Plaintiff with an unwanted solicitation text message using an ATDS.

36. Defendant's text messages forced Plaintiff and other similarly situated class members to live without the utility of their cellular phones by occupying their cellular telephone with one or more unwanted calls, causing a nuisance and lost time.

37. Defendant's text messages to Plaintiff's cellular telephone number was unsolicited by Plaintiff and without Plaintiff's permission.

38. Plaintiff is informed and believes and here upon alleges, that the text messages were sent by Defendant and/or Defendant's agent(s), with Defendant's permission, knowledge, control and for Defendant's economic benefit.

39. These SMS text messages made by Defendant or its agents were sent in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

## **CLASS ACTION ALLEGATIONS**

40. Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class").

41. Plaintiff represents, and is a member of, the Class, consisting of:

> All persons within the United States who received any text messages from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.

42. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

43. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and the Class members via their cellular telephones, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

44. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as

warranted as facts are learned in further investigation and discovery.

45. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.

46. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:
    a. Whether, within the four years prior to the filing of the Complaint, Defendant sent any text messages (other than a call made for emergency purposes or made with the prior express written consent of the called party) to Class members using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service;
    b. Whether the text messages were sent for marketing or solicitation purposes, such that they require prior express written consent;
    c. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and
    d. Whether Defendant should be enjoined from engaging in such conduct in the future.

47. As a person that received a SMS text message using an automatic telephone dialing system, without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

48. Plaintiff and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these

violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

49. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

50. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with the law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

51. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

52. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

53. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227. *et seq*.

54. As a result of Defendant's negligent violations of 47 U.S.C. § 227, *et se*q., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

56. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

57. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

58. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq*., Plaintiff and each member of the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

59. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

- Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks for himself and the Class injunctive relief prohibiting such conduct in the future;

- Costs of suit;
- Plaintiff be certified Class Representative and counsel for Plaintiff be certified Class Counsel;
- Any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

- Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks for himself and the Class injunctive relief prohibiting such conduct in the future;
- Costs of suit;
- Plaintiff be certified Class Representative and counsel for Plaintiff be certified Class Counsel;
- Any other relief the Court may deem just and proper.

### TRIAL BY JURY

60. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 22, 2019                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Abbas Kazerounian*
    Abbas Kazerounian, Esq.
    *Attorneys for Plaintiff*