UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DAVID BODIE<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>LYFT<br><br>　　　　　　　　　Defendant. | Case No.: 3:16-cv-02558-L-NLS<br><br>**ORDER DENYING MOTION TO DISMISS [ECF No. 41]** |

Pending before this Court is Defendant Lyft, Inc.'s ("Lyft") motion to dismiss Plaintiff Jason David Bodie's ("Bodie") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the following reasons, the Court **DENIES** Lyft's motion to dismiss.

## Factual Background

The SAC alleges that Bodie received two unsolicited text messages back-to-back from a telephone number that belongs to or was used by Lyft on or about October 10, 2016 at approximately 2:25 p.m. Pacific Standard Time. ECF No. 34 at ¶ 9. The SAC goes on alleging that the first message instructed him to download the Lyft app onto his cellular phone. *Id.* at ¶ 10. The second message included a link to download Lyft's app from the Apple app store. *Id.* at ¶ 11.

1

The SAC also alleges that a commercial text messaging system, acting as an agent or vendor of Lyft, sent the text messages for Lyft's financial benefit. ECF No. 34 at ¶ 14. It is alleged that Lyft uses the Twilio text messaging platform to send notifications *en masse* to a stored list of cellular telephone numbers without the need of individuals to dial the numbers. *Id.* at ¶¶ 18-22. The SAC also alleges the Twilio platform "has the capacity to automatically dial and send text messages" to cellular telephone numbers. *Id.* at ¶¶ 22, 25. The SAC alleges that Twilio customers, like Lyft, access the platform in order to: (1) create message content or portions of content, (2) upload and store content and/or telephone numbers, and (3) automatically send text messages to the stored list of cellular telephone numbers. *Id.* at ¶¶24-25, 29. The SAC alleges that the text messages were sent using "an automatic telephone dialing system ('ATDS') as defined by 47 U.S.C. § 227(a)(1)." *Id.* at 30. It is further alleged that Plaintiff suffered an injury as the text messaging invaded his privacy interest and caused him frustration and distress. *Id.* at ¶¶ 34-35.

## **Legal Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a Rule 12(b)(6) motion, the court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. It is not proper for a court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the…laws in ways that have not been alleged[,]" regardless of the deference shown to plaintiff's allegations. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, a court is free to grant leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a)(2). However, when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[,]" leave may be denied. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## Discussion

Lyft sets forth the following contentions as to why Plaintiff's SAC is insufficient: (1) Plaintiff's ATDS allegations are conclusory and (2) Plaintiff's allegations of significant human intervention with the Twilio platform removes Twilio from ATDS consideration.[1]

///
///
///

---

[1] Lyft also challenged the constitutionality of the TCPA as a content-based restriction. ECF No. 41-1 at 23-29. However, due to the Ninth Circuit's ruling in *Duguid v. Facebook, Inc.*, 2019 U.S. App. LEXIS 17675, at *24 (9th Cir. June 13, 2019) that the TCPA could be preserved once excising the debt-collection exception, this Court DENIES AS MOOT Lyft's motion to dismiss the SAC on constitutional grounds and will not examine the constitutionality of the TCPA. Moreover, the Court DENIES AS MOOT Lyft's request to stay the case pending the outcome of *Duguid*.

**A. ATDS Allegations**

As both parties set forth, the Ninth Circuit provides the clearest guidance about what the statutory definition of ATDS includes in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). The TCPA, as originally enacted, defined an ATDS as equipment which has the capacity to (1) "store or produce telephone numbers to be called, using a random or sequential number generator;" and (2) "to dial such numbers." *Marks*, 90 F.3d at 1044 (citing Pub. L. No. 102-243, § 227, 105 Stat. 2394, 2395); 47 U.S.C. § 227(a)(1). Since then, Congress has not changed the ATDS definition despite amended the TCPA in general several times. *Id.* at 1045. The Ninth Circuit acknowledged the ATDS definition "naturally raises two questions: (i) when does a device have the 'capacity' to perform the two enumerated functions; and (ii) what precisely are those functions?" *Marks*, 904 F.3d at 1050 (quoting *ACA Int'l v. Fed Commc'ns Comm'n* 885 F.3d 687, 695 (D.C. Cir. 2018)). The circuit court identified two issues to be addressed: (1) "whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a stored list[;]" and (2) "to what extent the device must function without human intervention in order to qualify as an ATDS." *Id.* at 1050.

In addressing the first issue, the Ninth Circuit concluded the "statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Marks*, 904 F.3d at 1052. Consequently, the circuit court interpreted ATDS to mean "equipment which has the capacity—(1) to store numbers to be called or (2) produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Ibid.*

In addressing the second issue, the Ninth Circuit clarified that a total lack of human intervention was not required for a device to qualify as an ATDS. *Marks*, 904 F.3d at 1052. The court reasoned that Congress clearly intended to target equipment with the capacity to automatically dial, rather than equipment that without any human oversight or control,

4

when referring to the device as an "*automatic* telephone *dialing* system." *Ibid.* (Citing 47 U.S.C. § 227(a)(1) ; (see citing *ACA Int'l*, 885 F.3d at 703); (emphasis in original). Ultimately, the Ninth Circuit held "the term [ATDS] means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)[.]"

Under *Marks*, the SAC clearly alleges that an ATDS was used in this case. The SAC alleges that Twilio customers, like Lyft, access the platform in order to: (1) create message content or portions of content, (2) upload and store content and/or telephone numbers, and (3) automatically send text messages to the stored list of cellular telephone numbers. *Id.* at ¶¶24-25, 29. Additionally, it is alleged that Lyft uses the Twilio text messaging platform to send notifications *en masse* to a stored list of cellular telephone numbers without the need of individuals to dial the numbers. *Id.* at ¶¶ 18-22. As such, the Court finds that the Twilio platform has the capacity to meet each hallmark of an ATDS. Accordingly, the Court DENIES Lyft's motion to dismiss for failure to sufficiently allege use of an ATDS.

## Conclusion

For the foregoing reasons, the Court DENIES Lyft's motion to dismiss [ECF No. 41]. As such, Lyft must serve an answer or otherwise respond to the SAC within 21 days of service of this order.

Dated: October 4, 2019

_____
Hon. M. James Lorenz
United States District Judge